FISCHER v. FRANKE.

(Supreme Court, Appellate Division, First Department. October 8, 1897.)

1. DANGEROUS PREMISES—NEGLIGENCE—PROVINCE OF JURY.

In an action in which plaintiff recovered damages for personal injury, plaintiff's evidence showed that the accident occurred in the nighttime, while she was crossing a temporary bridge erected by defendant as a temporary substitute for the sidewalk of a city street, and was due to a hole in the planking; that a pile of bricks beside the bridge shut off the light of the street lamp, and made the bridge very dark; that the hole had been there for several days, but could not be seen at night unless one looked for it; and that there was no hand rail on the side of the bridge where plaintiff fell. Defendant's witnesses testified that there was no hole at that point, but that there was one in the sidewalk just beyond the bridge. *Held*, that the defendant's want of care and plaintiff's freedom from contributory negligence were properly submitted to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

At the trial, the court refused to permit evidence offered by defendant that no complaint had been filed with the department of public works in regard to anything concerning the bridge. *Held* no error, because defendant's negligence, if proven, could in no way be affected by such evidence.

3. TRIAL—ESTOPPEL TO OBJECT.

It was also inadmissible because evidence of a policeman that he had made a report to the public authorities of the unsafe condition of the bridge, offered on behalf of the plaintiff, had been excluded, under defendant's objection, as irrelevant and incompetent.

Appeal from trial term, New York county.

Action by Millie Fischer against Edward Franke. There was a judgment entered on a verdict in favor of plaintiff, from which, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

The action was brought to recover damages for personal injuries claimed by the plaintiff to have been sustained by her on the night of Sunday, August 12, 1894, while crossing a bridge in front of the premises Nos. 46 and 48 East Houston street, in the city of New York, the bridge having been erected as a substitute for the sidewalk at that point, which had been removed in the course of an excavation for the purposes of a vault in connection with adjacent buildings then in course of construction. The plaintiff's evidence was directed to showing that the direct cause of her mishap was a hole or opening in or upon the second step in her descent from the bridge. The plaintiff's own testimony was that she was engaged in missionary work, and that after she had completed her duties for the evening she crossed down Mulberry street, and came around to Houston street, and crossed over the bridge in front of Nos. 46 and 48 East Houston street; that there was a large pile of bricks a short distance from the bridge, reaching up to the first story of No. 50, and that this shut off all the light of the electric light which was at the corner of Mott street; that there were no lamps or lights on the bridge; that there was a reflection of light on the Mulberry street side of the bridge, but that on the side towards her house there was no light whatever, and it was very dark; that she passed over the bridge, and in going down on the east side towards her house, No. 50 East Houston street, one of her feet caught in a hole in the second step, and she heard the bone snap, and she was pitched forward; that her foot was pulled out of the hole by two young men who came from across the street, attracted by her screams; that she was taken to her door, and an ambulance called for, and she was taken to the hospital. Hugh Campbell, one of the two young men referred to by the plaintiff, testified in her behalf that at the time of the accident he was standing on the other side of the street; that his attention was attracted by hearing the plaintiff,

who was on the bridge, calling her husband's name, and that, after getting the answer "All right" from her husband, she started down the steps; that a moment later he heard the woman scream, and he and his companion ran across the street, and found the plaintiff prostrated, and her foot caught in the second step; that they took her foot out of the hole, and cut her shoe, and carried her to her door; that there was no light around the bridge except a lamp on the other side of the bricks towards the car tracks; that in front of the bridge were two piles of bricks, and that the light was on the outside of the pile of bricks, towards the car track, shedding light on the middle of the street, but none on the bridge; that there was a hand rail on one side of the bridge, but not on the side where the plaintiff fell; that the hole appeared as though there was a break in the step, and was about three inches in diameter. Morris Breen testified that he was walking through Houston street on the evening in question, and that when he came near the bridge he saw a crowd, and learned that a woman had fallen on the bridge: that he made an examination of the steps, and found there was an opening in the second step; that the step was composed of two planks, and that the planks had parted or separated, starting in the middle, and widening towards the street, and that the opening was V-shaped. Michael Bennett testified that while coming along Houston street he saw some young men carrying a lady on the sidewalk towards the house, and he ran and saw the plaintiff lying there; that he made an examination of the stairs after the accident, and found that the second step was composed of two planks, which had separated, the opening starting about in the middle of the step, and widening towards the street, and that the shape of the opening was like a V, and wide enough for a heel to step in; that five or six days before the accident he noticed that same opening, and that he had crossed there quite frequently; that there was no hand rail on the side towards the street, and at the end of the bridge there was a pile of bricks, which darkened the place; that there was no light except one in the middle of the street; that it was very dark at the place where the plaintiff fell, and that one would have to look for the opening in the step to see it; that he did not notice any watchman around at the time of the accident. but that the watchman came there about ten minutes after the accident, and that he spoke to him about the hole. The plaintiff's husband testified as to what occurred after the accident, and that he then examined the steps of the bridge nearest to his house, and found an opening in the second step; that the step was composed of two boards, which had separated, the widest part of the opening being towards the street; that the opening was shaped like a V, and that it was necessary to stoop down in order to see it. In addition, there was the evidence of one Alfred J. Goodwin, who built the bridge. He testified that when completed it was in good order; that about a month or so after it was completed he passed there, and noticed that the bridge had been moved out of the original position in which it had been built, and that it was decidedly unsafe at that time; that the end of the bridge had been elevated above its original position. To offset this testimony, the defendant called several witnesses, among others, his foreman, who testified that there was no hole or opening in any of the steps of the bridge on the 12th of August, 1894, or at any other time, which he did not fix and attend to right away. The architect employed on the building testified that he was there about four or five times a week, and that every day he came to the building he made an examination of every part of the bridge, and did not notice any opening in it. There was also the testimony of two or three police officers, whose duties required them to be at or about the place of the alleged accident, and they testified that they never saw any hole in the second step. This, together with the evidence of the watchman and the defendant himself, both of whom denied the existence of a hole, was substantially all of the defendant's evidence. The two latter witnesses endeavored to prove that the sidewalk was defective,—that there were four or five holes in it,—and that the plaintiff's injuries might have resulted from her foot falling into one of such holes.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and PARKER, JJ.

Simon Sultan, for appellant.

Louis J. Vorhaus, for respondent.

O'BRIEN, J.  From the summary of the evidence it will be seen that there was a clear conflict upon the crucial question as to whether or not there was a hole in the second step of the bridge, in which some portion of the plaintiff's foot became entangled while she was descending the bridge.  It was not seriously disputed that on the evening in question the plaintiff was injured at or near the bridge, but the effort on the part of the defendant was directed to showing that there was no hole in the bridge, and that the plaintiff might have fallen two or three feet from the steps, owing to the defective condition of the sidewalk.  It is true, there is some discrepancy in the testimony of the plaintiff's witnesses as to the character of the hole in the second step; one describing it as a break, and the others stating that it was a V-shaped opening in the planks, widening towards the street side.    None of the witnesses, however, claimed that there were two separate and distinct holes, and the discrepancy in the description as to the character of the hole and its size and location is easily explainable by the fact that some of the witnesses examined it on the night of the accident, in the absence, as shown, of sufficient light, and were testifying a long while afterwards as to their recollection of its appearance.    Upon the whole case, we think, as did the learned trial judge, that it was proper to submit as questions of fact the defendant's want of care in the maintenance of the bridge, and the plaintiff's freedom from contributory negligence; and, such questions having been presented in a fair and impartial charge, this court would not be justified in interfering with the verdict of the jury, unless upon the ground of special errors assigned.    All of these, except one, relate to certain portions of the charge as made, to the modification of requests, or refusals to charge as requested by the defendants; but, in view of the favorable manner in which, so far as the defendant was concerned, the different questions were presented to the jury, we think that the exceptions to such rulings are hypercritical.    The only ruling assailed, exclusive of those relating to the charge, is the refusal of the court to permit evidence as to whether any complaint had been filed with the department of public works in regard to anything concerning the bridge, or the said premises in course of construction.    We think this ruling was right, and for two reasons:    If the plaintiff had sought to recover upon the ground of a nuisance, such testimony might in some way have been relevant; but where the action was predicated upon the negligence of the defendant in constructing and maintaining for an unreasonable time a bridge which was defective, and which was used by the public as a substitute for the sidewalk, this, if proven, could in no way be affected by the question whether complaints were or were not filed with the department of public works.    The second reason lies in the fact that similar evidence was sought to be introduced by the plaintiff in questions put to one of the policemen as to whether he had ever made a report to the public authorities of the unsafe condition of the bridge; and under the defendant's objection such evidence was ex-

cluded. While it is true that the objection was to the form of the plaintiff's questions, there is little reason to doubt, with respect to one of the questions, at least, that the court's ruling was based upon the theory, not only that the question was erroneous in form, but that the evidence sought to be adduced was irrelevant and incompetent. Having successfully got the court to take this position, we do not think that when the defendant sought to introduce similar evidence he can, with good grace, urge that it was error on the part of the court to apply the same rule. Our examination of the record, therefore, has led us to the conclusion that no substantial error was committed, such as would justify our reversal of a judgment entered after a trial which was in every way conducted with a view of according to the defendant all his rights, and which, upon conflicting evidence, resulted in a verdict in plaintiff's favor for an amount which, in view of the extent of the injuries, must be regarded as moderate.

The judgment should, therefore, be affirmed, with costs. All concur.